# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| IN RE:<br>SHANAE DENISE POTTS<br><br>    Debtor.<br><br>REBECCA H. FISCHER,<br>    Plaintiff,<br><br>vs.<br><br>AFS ACCEPTANCE, LLC<br><br>    Defendant. | Case No.   20-31053<br>S.S.# xxx-xx-3642<br><br>Chapter 7 Bankruptcy<br><br>ADVER. PROC. NO. 20-03_____ |

## COMPLAINT

Plaintiff Rebecca Hoyt Fischer, Chapter 7 Trustee (the "Trustee") of Shanae Denise Potts ("Debtor"), brings this adversary proceeding pursuant to 11 U.S.C. § 547 against AFS Acceptance, LLC ("AFS") and in support thereof states:

1. On June 26, 2020, (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Indiana (South Bend Division). The subsequent bankruptcy case was entitled <u>Shanae Denise Potts</u> (Case No. 20-31053) (the "Bankruptcy Case").

2. The claims asserted in this adversary proceeding arise in, arise under, or are related to the Bankruptcy Case. Accordingly, this court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157 and 1334 (b).

3. This adversary proceeding is a core proceeding within the meaning of one or more subsections of 28 U.S.C. § 157 (b)(2). This adversary proceeding relates to the Bankruptcy Case.

4. Pursuant to 28 U.S.C. § 1409, the United States Bankruptcy Court for the Northern

District of Indiana (South Bend Division) is the proper venue for this adversary proceeding.

5. On February 28, 2020, Debtor purchased and obtained possession of a 2018 Hyundai Santa Fe Sport vehicle having VIN#5NMZT3LB7JH077852 (the "Vehicle") from Michiana Chrysler Dodge Jeep Ram in Mishawaka, Indiana and executed a Retail Installment Contract and Security Agreement (the "Agreement"). A redacted copy of the Agreement is attached hereto as Exhibit "A".

6. The Agreement was assigned to AFS.

7. On May 2, 2020, AFS perfected its security interest in the Vehicle, 64 days after the Debtor received possession of the Vehicle. A copy of the Indiana Official Title & Lien Record is attached hereto, redacted as required, as Exhibit "B".

8. AFS's recording of its lien on the Vehicle's title more than 30 days after the Debtor received possession of the Vehicle and on or within 90 days prior to the Petition Date (the "Preference") is a preference which may be avoided by the Trustee.

9. As a matter of law pursuant to 11 U.S.C. § 547 (f), the Debtor is presumed to have been insolvent on and during the ninety days immediately preceding the Petition Date, being March 28, 2020 through June 26, 2020 (the "Preference Period").

10. The Debtor was, in fact, insolvent at all times during the Preference Period.

11. The Preference was made for the benefit of AFS, a creditor of the Debtor, on account of antecedent debts due and owing from the Debtor to AFS before the Preference was made.

12. The Preference enabled AFS to receive more on account of antecedent debts than AFS would have received if the lien had not been recorded and AFS received payment on account of the corresponding antecedent debt as an unsecured creditor to the extent provided by the provisions of the Bankruptcy Code.

13. Pursuant to 11 U.S.C. § 547, the Trustee may avoid the Preference.

14. The Defendant was the initial transferee of the Preference or an immediate or mediate transferee of the initial transferee of the Preference.

15. Pursuant to 11 U.S.C. § 550, the Trustee may recover the Preference or, if the court so orders, the value of the Preference, from the Defendant.

16. The lien was not recorded within 30 days after the Debtor received possession of the Vehicle, as required for a defense under 11 U.S.C. § 547(c)(3)(B).

WHEREFORE, the Trustee respectfully requests that this court enter a judgment in her favor with respect to Count I providing her with the following relief against AFS:

A. That this court adjudge, decree and declare that the recording of AFS's lien on the Vehicle was a voidable preference under 11 U.S.C. §547 and that this court set aside, avoid and hold the lien to be null and void, and that AFS is an unsecured creditor.

B. That this court adjudge, decree and declare that the value of the avoided lien on the Vehicle be preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §551.

C. That the Trustee be allowed such other and further relief to which she may be entitled as a matter of law or equity.

Dated: August ___, 2020

/s/Rebecca Hoyt Fischer #10537-72
Rebecca Hoyt Fischer, Trustee
LADERER & FISCHER, P.C.
525 E. Colfax Ave., Unit #101
South Bend, IN 46617
Telephone: (574) 284-2354
Facsimile: (574) 284-2356

**MICHIANA CHRYSLER DODGE JEEP RAM**
**120 W MCKINLEY AVE**
**MISHAWAKA  IN  46545**
**574-254-2010**

## RETAIL PURCHASE AGREEMENT

CUST# 11604959
Deal Number: **43334**

Purchaser's Name(s): **SHANAE POTTS**
Date: **02/28/2020**
Address: **1629 N ADAMS ST   SOUTH BEND, IN  46628**
County: **ST JOSEPH**
Telephone (1): redacted   Telephone (2): redacted   DOB: redacted
E-mail: redacted   D.L./State I.D.#: _____  Issuing State: _____  Exp. Date: _____

The above information has been requested so that we may verify your identity. By signing below, you represent that you are at least 18 years of age and have authority to enter into this Agreement. The Odometer Reading for the Vehicle you are purchasing is accurate unless indicated otherwise. Please refer to the Federal Mileage Statement for full disclosure.

| YEAR | MAKE | MODEL | COLOR | STOCK NO. |
|---|---|---|---|---|
| 2018 | HYUNDAI | Santa Fe | | 20123A |

| VIN/SERIAL NO. | ODOMETER READING | SALESPERSON |
|---|---|---|
| 5NMZT3LB7JH077852 | ☐ Not Accurate  90001 | VICTOR SHEETZ |

THE VEHICLE IS: ☐ NEW  ☒ USED  ☐ REBUILT
PRIOR USE DISCLOSURE: ☐ DEMONSTRATOR  ☐ FACTORY OFFICIAL  ☐ RENTAL  ☐ OTHER

### WARRANTY STATEMENT

Any warranties by a manufacturer or supplier other than our Dealership are theirs, not ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle and the related goods and services. We are selling this Vehicle to you AS-IS and we expressly disclaim all warranties, express and implied, including any implied warranties of merchantability and fitness for a particular purpose, unless the box beside "Used Vehicle Limited Warranty Applies" is marked below or we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction.

CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Traducción Española: Guía para compradores de vehículos usados. La información que aparece en la ventanilla de este vehículo forma parte de este contrato. La información contenida en el formulario de la ventanilla anula cualquier provisión que establezca lo contrario y que aparezca en el contrato de venta.

☐ Used Vehicle Limited Warranty Applies: We are providing a Used Vehicle Limited Warranty in connection with this transaction. Any implied warranties apply for the duration of the Limited Warranty.

| | Amount |
|---|---|
| CASH PRICE OF VEHICLE | 17158.00 |
| TOTAL TAXES | 1214.99 |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| Doc Fee | 199.00 |
| Title Fee | 15.00 |
| Conv Fee | 15.00 |
| N/A | N/A |
| N/A | N/A |

### TRADE-IN VEHICLE INFORMATION

| Year: N/A | Make: N/A | Model: N/A | Color: N/A |
|---|---|---|---|

VIN/Serial No: N/A
Odometer Reading: ☐ Not Accurate  N/A
Trade-In Allowance: N/A
Balance Owed & Lienholder: N/A

| | |
|---|---|
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |

**The Deposit/Down Payment received from you is not refundable, except as set forth in this Retail Purchase Agreement. In the case of a Deposit, we will refrain from selling the Vehicle for _____ days.

X _____   x  N/A

### OTHER MATERIAL UNDERSTANDINGS AND INTEGRATED DOCUMENTS
☐ PLEASE SEE THE DELIVERY CONFIRMATION
☐ PLEASE SEE THE CONDITIONAL (SPOT) DELIVERY AGREEMENT

| | |
|---|---|
| N/A | N/A |
| TOTAL DUE | 18601.99 |
| LESS DEPOSIT/DOWN PAYMENT** | 3000.00 |
| LESS REBATE | N/A |
| N/A | N/A |
| LESS CASH DUE AT DELIVERY | N/A |
| AMOUNT TO BE FINANCED (See Paragraphs 11 and 14) | 15601.99 |

*Document Preparation Fee: This Fee (if applicable) is negotiable and reflects expenses incurred for the preparation, handling, and/or service of documents in connection with this transaction. However, this Fee does not include payment for the preparation of legal documents or documents incidental to the extension of credit.

This Agreement and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this Retail Purchase Agreement and no other agreement or understanding of any nature concerning the same has been made or entered into or will be recognized. I have read all of the terms and conditions of this Agreement, including the Agreement to Arbitrate, and agree to them as if they were printed above my signature. I further acknowledge receipt of a copy of this Agreement. This Agreement shall not become binding until signed and accepted by an Authorized Dealership Representative.

Purchaser: 02/28/2020
N/A
Purchaser:

Accepted by Authorized Dealership Representative: 02/28/2020

DealerCAP
74273*1*MIC-FI
CATALOG #8964249

02/28/2020  06:37 pm
Page 1 of 3
© 2015 CDK Global, LLC  Indiana (04/19)

10. **Other Products and Services:** The Dealership offers its customers goods and services from various suppliers. The amounts charged to customers for such goods or services may be greater than the Dealership's cost, and/or the Dealership may receive a commission or other payment in connection with such sale. You are not required to purchase any other goods or services from us, nor are you required to finance the Amount to be Financed under this Agreement with a particular lending source. In the event this Agreement includes a charge for other goods or services for which you must complete an application for coverage, and for any reason such coverage cannot be provided, you will receive a credit for the amount charged. If the cost of other goods or services was included in the amount to be financed in connection with this transaction, then this credit will be applied to the outstanding balance you owe to the Lender.

11. **Dealer Assisted Financing:** If we assist you to obtain financing for this transaction, the Annual Percentage Rate may be negotiated with us and we may receive a fee, commission or other compensation from the Lender. We do not make any representations or warranties regarding whether you obtained the best rate or could have obtained a better rate from us or a third party.

12. **GOVERNING LAW:** THE TERMS AND CONDITIONS OF THIS AGREEMENT (INCLUDING ANY DOCUMENTS WHICH ARE A PART OF THIS TRANSACTION OR INCORPORATED HEREIN BY REFERENCE) AND ANY SALE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF INDIANA.

13. **LIMIT ON DAMAGES:** TO THE EXTENT PERMITTED BY INDIANA LAW, PURCHASER EXPRESSLY WAIVES AND SHALL NOT BE ENTITLED TO RECOVER FROM THE DEALERSHIP ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

14. **CONDITIONAL DELIVERY AGREEMENT/LIMITED RIGHT TO CANCEL:** You may secure financing for this transaction through us or a financial institution of your choice. If you have elected to secure financing though us, the provisions of the Conditional Delivery Agreement/Limited Right to Cancel will apply. You agree that we may immediately proceed to sell any Trade-In Vehicle, even if it is sold prior to the assignment of the Retail Installment Sale Contract to a financing institution. We may cancel this Agreement if: (1) you provide false or incomplete information regarding your creditworthiness; (2) your credit application is not approved by a financing source; or (3) your purchase is subject to the Conditional Delivery Agreement/Limited Right to Cancel and the Retail Installment Sale Contract is not accepted or approved by a financing source on terms acceptable to us.

15. **AGREEMENT TO ARBITRATE. Important – The Agreement to Arbitrate Affects Your Legal Rights.** By entering into this Agreement to Arbitrate, Purchaser(s) and Dealership, including any employees, agents, successors or assigns (collectively referred to as "the Parties") agree, except as otherwise provided in this Agreement to Arbitrate, to settle by binding arbitration any dispute whether based in whole or in part on contract, tort, statute, or other equitable relief, including but not limited to any dispute related to (1) the purchase or condition of the Vehicle; (2) any products and services purchased in conjunction with the Vehicle and any resulting transaction or relationship; (3) the application for and the terms of any financing obtained in connection with the transaction; (4) any other dispute between them related to the purchase transaction and any documents that are part of the transaction; and/or (5) any alleged promises, representations and/or warranties made to or relied upon by the Parties, and any alleged unfair, deceptive, or unconscionable acts or practices. If federal law provides that a claim or dispute is not subject to binding arbitration, this Agreement to Arbitrate shall not apply to such claim or dispute.

Notwithstanding any other provisions in this Agreement to Arbitrate, neither party is precluded from filing a complaint with the Office of Attorney General of this state or from participating in a mediation program administered by the Attorney General or Better Business Bureau. The Parties also agree that they retain any right to self-help or provisional remedies available by law or pursuant to an agreement between them. The Parties also retain the right to seek remedies in a small claims court or equivalent state court for disputes or claims within that court's jurisdiction. Neither Party waives the right to request arbitration under this Agreement to Arbitrate by exercising such other rights and remedies or by initially agreeing to litigate a claim in court. If such claim or dispute is transferred, removed or appealed to a different court or if a new claim is asserted after the initial filing of such claim or dispute, the Parties shall have the right to request arbitration under this Agreement to Arbitrate. However, once one of the Parties has demanded arbitration, binding arbitration will be the exclusive method for resolving any and all claims.

The Federal Arbitration Act (9 U.S.C. §1 et seq.) ("FAA") shall govern any arbitration under this Agreement to Arbitrate. Any dispute between the Parties shall be arbitrated by a single arbitrator on an individual basis, not as a class action. The arbitration shall be conducted by and in accordance with the rules of the **American Arbitration Association** ("AAA") (1-800-778-7879), 120 Broadway, 21st Floor, New York, New York 10271 (www.adr.org). "Consumer" claims shall be arbitrated in accordance with the American Arbitration Association's consumer arbitration rules and fee schedule. A copy of the Arbitration Rules may be obtained by visiting the website indicated or by contacting the organization directly. The Rules in effect at the time the request for arbitration is made will govern. If the AAA will not accept the request to arbitrate, the Parties may agree upon another organization, or the arbitrator shall be selected pursuant to the FAA and conduct the arbitration in accordance with the AAA Rules and this Agreement to Arbitrate.

To initiate an arbitration proceeding, the demanding Party must provide the other Party a demand for arbitration that includes a statement of the basis for the dispute, the names and addresses of the Parties involved, and the amount of monetary damages involved and/or any other remedy sought. If an organization other than the AAA will conduct the arbitration of consumer claims (as defined by AAA Consumer Arbitration Rules), the Dealership will advance the Consumer's portion of the filing, administration, service, or case management fee and the hearing or arbitrator fee which exceeds the amount of the AAA Consumer Filing Fee up to a maximum of $2500 upon request. The amount that the Dealership advances may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law.

The arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable Arbitration Rules. The arbitration hearing shall be held in the federal district where the Dealership is located and the transaction occurred. Any court having jurisdiction may enforce this Agreement to Arbitrate and enter judgment on the arbitrator's award. If it is inconvenient for either Party to participate in arbitration proceedings in the district where the Dealership is located, the proceedings shall be held at a mutually convenient location agreed upon by the Parties or as determined by the arbitrator.

The arbitrator shall apply and be bound by governing state and federal law when making the decision and award and shall only award those damages or other relief permitted by applicable law. The Parties shall be provided a written decision setting forth the findings of fact and/or conclusions of law. The arbitration proceedings and the decision of the arbitrator shall be open to the public. **Nothing in this Agreement to Arbitrate shall be interpreted as limiting or precluding the arbitrator from awarding monetary damages or any other relief provided for by law. The Parties agree that by entering into this Agreement to Arbitrate, they are expressly waiving their right to a jury trial and their right to bring or participate in any class action or multi-plaintiff action in court or through arbitration.** The decision of the arbitrator shall be final and binding, except for any right of appeal provided by the FAA and the Arbitration Rules that governed the original arbitration proceedings. The appealing party shall be responsible for the filing fee and other arbitration appeal costs, subject to a final determination by the arbitrator of a fair apportionment of costs.

If any part of this Agreement to Arbitrate, other than waivers of class action rights, shall be declared unenforceable for any reason, the remainder of the Agreement to Arbitrate shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been asserted, then the remainder of this Agreement to Arbitrate shall be unenforceable. This Agreement to Arbitrate shall survive (1) any termination, payoff, assignment, transfer or cancellation of this Retail Purchase Agreement and/or the Retail Installment Sale Contract/Finance Contract; (2) any repossession of the Vehicle and any legal proceeding to collect a debt owed by the other party; and (3) any bankruptcy proceeding. To the extent permitted by law, this Agreement to Arbitrate is incorporated by reference into the Retail Installment Sale Contract/Finance Contract. If the Retail Installment Sale Contract/Finance Contract contains an arbitration clause, that arbitration clause shall govern any disputes or claims between the Parties; if, however, any term of this Agreement to Arbitrate conflicts with the terms of any other document or agreement between the Parties, the terms of this Agreement to Arbitrate shall prevail. This Agreement to Arbitrate may not be modified or amended except by a separate written agreement signed by Purchaser(s) and an Authorized Dealership Representative.

16. **Entire Agreement and Signing Other Documents:** This Agreement and any documents which are part of this transaction or incorporated herein by reference comprise the entire agreement affecting this transaction. No other agreement or understanding of any nature has been made or will be recognized. You agree to sign any and all documents necessary to complete the terms of this transaction.

120 W MCKINLEY AVE   MISHAWAKA, IN   46545
574-254-2010

DEAL# 43334
CUST# 11604959

# BUYERS GUIDE

**IMPORTANT.** Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| HYUNDAI | Santa Fe | 2018 | 5NMZT3LB7JH077852 |
|---|---|---|---|
| VEHICLE MAKE | MODEL | YEAR | VEHICLE IDENTIFICATION NUMBER (VIN) |

**WARRANTIES FOR THIS VEHICLE:**

## ☐ AS IS - NO DEALER WARRANTY
THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE.

-------------------------------------------------------------

## ☐ DEALER WARRANTY

☐ FULL WARRANTY.

☐ LIMITED WARRANTY. The dealer will pay __N/A__% of the labor and __N/A__% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's repair obligations. *Implied warranties* under your state's laws may give you additional rights.

**SYSTEMS COVERED:**                    **DURATION:**

**NON-DEALER WARRANTIES FOR THIS VEHICLE:**

☐ MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on some components of the vehicle.

☐ MANUFACTURER'S USED VEHICLE WARRANTY APPLIES.

☐ OTHER USED VEHICLE WARRANTY APPLIES.

Ask the dealer for a copy of the warranty document and an explanation of warranty coverage, exclusions, and repair obligations.

☐ SERVICE CONTRACT. A service contract on this vehicle is available for an extra charge. Ask for details about coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of your purchase of this vehicle, *implied warranties* under your state's laws may give you additional rights.

**ASK THE DEALER IF YOUR MECHANIC CAN INSPECT THE VEHICLE ON OR OFF THE LOT.**

**OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS.** For information on how to obtain a vehicle history report, visit ftc.gov/usedcars. To check for open safety recalls, visit safercar.gov. You will need the vehicle identification number (VIN) shown above to make the best use of the resources on these sites.

**SEE OTHER SIDE** for important additional information, including a list of major defects that may occur in used motor vehicles.

Si el concesionario gestiona la venta en español, pídale una copia de la Guía del Comprador en español.

57587*1*MIC-FI
CATALOG #8961007



© 2015 CDK Global, LLC   (01/17)

0040294

IN-102 7/1/2019

# Retail Installment Contract and Security Agreement

DEAL# 43334
CUST#: 11604959

**Seller Name and Address**
MICHIANA CHRYSLER DODGE JEEP RAM
120 W MCKINLEY AVE
MISHAWAKA IN 46545
574-254-2010

**Buyer(s) Name(s) and Address(es)**
SHANAE POTTS
1629 N ADAMS ST
SOUTH BEND  IN  46628
redacted

**Summary**
No. _____
Date 02/28/2020

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $3000.00 |
|---|---|---|---|---|
| 25.00 % | $ 12156.41 | $ 15601.99 | $ 27758.40 | $ 30758.40 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 60 | $ 462.64 | **MONTHLY BEGINNING** 04/13/2020 |
| N/A | $ N/A | N/A |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of: $5.00 if payments are due every 14 days or less; or $25.00 if payments are due every 15 days or more, or this contract is payable in a single installment due at least 30 days after it is made.

**Prepayment.** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2018 | HYUNDAI | Santa Fe | WG | 5NMZT3LB7JH077852 | 90001 |

☐ New
☒ Used
☐ Demo

Other: N/A

## Description of Trade-In

N/A

### Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: N/A
_N/A_. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ 15601.99  plus finance charges accruing on the unpaid balance at the rate of 25.00 % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of
$ N/A if you pay this Contract in full before we have earned that much in finance charges.

Retail Installment Contract-IN Not for use in transactions secured by a dwelling.
©2019 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
75108*1*MIC-FI

RSSIMVLFLZIN 7/1/2019
Bankers Systems®
Page 1 of 5
02/28/2020  06:37 pm

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle | $ | 17158.00 |
| b. | Sales Tax | $ | 1214.99 |
| c. | N/A to: N/A | $ | N/A |
| d. | Service Contract, paid to: N/A | $ | N/A |
| e. | **Cash Price** (a+b+c+d) | $ | 18372.99 |
| f. | Trade-in allowance | $ | N/A |
| g. | Less: Amount owing, paid to (includes o.): N/A | $ | N/A |
| h. | Net trade-in (f-g; if negative, enter $0 here and enter the amount on line o.) | $ | 0.00 |
| i. | Cash payment | $ | 3000.00 |
| j. | Manufacturer's rebate | $ | N/A |
| k. | Deferred down payment | $ | N/A |
| l. | Other down payment (describe) N/A | $ | N/A |
| m. | **Down Payment** (h+i+j+k+l) | $ | 3000.00 |
| n. | **Unpaid balance of Cash Price** (e-m) | $ | 15372.99 |
| o. | Financed trade-in balance (see line h.) | $ | 0.00 |
| p. | Paid to public officials: | | |
| | i  Title Fee | $ | 15.00 |
| | ii N/A | $ | N/A |
| | iii N/A | $ | N/A |
| q. | Insurance premiums paid to insurance company(ies) | $ | N/A |
| r. | To: N/A | $ | N/A |
| s. | To: MICHIANA CHR  Doc Fee | $ | 199.00 |
| t. | To: DEALER TRACK CONVENIENCE FEE | $ | 15.00 |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | To: N/A | $ | N/A |
| z. | To: N/A | $ | N/A |
| aa. | To: N/A | $ | N/A |
| bb. | **Total Other Charges/Amts Paid** (o thru aa) | $ | 229.00 |
| cc. | **Prepaid Finance Charge** | $ | N/A |
| dd. | **Amount Financed** (n+bb-cc) | $ | 15601.99 |

We may retain or receive a portion of any amounts paid to others.

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☒ None

Premium $ N/A   Term N/A

Insured N/A

**Credit Disability**

☐ Single  ☐ Joint  ☒ None

Premium $ N/A   Term N/A

Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: N/A    N/A    N/A DOB

By: N/A    N/A    N/A DOB

By:         N/A    N/A DOB

**Property Insurance.** You must insure the Property. You may purchase the required insurance from any insurance company you choose or provide it through an existing policy owned or controlled by you, if the insurance and insurance company are reasonably acceptable to us. The collision coverage deductible may not exceed $ N/A . If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A
☐ $ N/A Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Additional Cov. $ N/A
☐ N/A  $ N/A

Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A of coverage.

Retail Installment Contract-IN Not for use in transactions secured by a dwelling.
©2019 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
75108*1*MIC-FI

RSSIMVLFLZIN 7/1/2019
Bankers Systems®
Page 2 of 5
02/28/2020 06:37 pm

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**
Term            N/A
Price       $   N/A
Coverage        N/A

☐ **Gap Waiver or Gap Coverage**
Term            N/A
Price       $   N/A
Coverage        N/A

☐ **N/A**
Term            N/A
Price       $   N/A
Coverage        N/A

N/A                                          N/A
By: N/A                                      Date

N/A                                          N/A
By: N/A                                      Date

N/A                                          N/A
By: N/A                                      Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Balloon Payment.** If any scheduled payment is more than twice as large as the average of all other regularly scheduled payments, you may refinance that payment when due. You may do so on terms as favorable as the terms originally agreed to in this Contract. This right does not apply if your payment schedule is adjusted for seasonal or irregular income.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Indiana and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

◆ You fail to perform any obligation that you have undertaken in this Contract.

◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our reasonable attorneys' fees, on referral of this Contract to an attorney not a salaried employee of ours or an assignee of this Contract. You also agree to pay the reasonable expenses we incur realizing on any Property.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, without notice, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges, subject to any refund required by law.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the rate described in the Payment section until paid in full.

◆ After we give you any notice and opportunity to cure your default that the law requires, we may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

Retail Installment Contract-IN Not for use in transactions secured by a dwelling.
©2019 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
75108*1*MIC-FI
RSSIMVLFLZIN 7/1/2019
Bankers Systems®
Page 3 of 5
02/28/2020  06:37 pm

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the Vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

### Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You agree we may file a financing statement signed by us instead of you with the appropriate public officials.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

### Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

### Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the Description of Property section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

By: _____N/A_____ Date: _____
Signature of Third Party Owner (NOT the Buyer)

[This area intentionally left blank.]

Retail Installment Contract-IN Not for use in transactions secured by a dwelling.
©2019 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
75108*1*MIC-FI
RSSIMVLFLZIN 7/1/2019
Bankers Systems®
Page 4 of 5
02/28/2020 06:37 pm

☐ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

**Assignment.** This Contract and Security Agreement is assigned to
**AFS ACCEPTANCE, LLC**
**PO BOX 278272 SACRAMENTO CA 95827**
the Assignee, phone **866-206-5534**. This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐ This Assignment is made with recourse.

**Seller**

By: _____  02/28/2020
                                Date

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: **SHANAE POTTS**                02/28/2020
                                     Date

By: **N/A**      N/A                 N/A
                                     Date

By: _____  N/A                     N/A
                                     Date

**Notice to Buyer.** 1 Do not sign this Contract before you read it or if it contains any blank spaces. 2 You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

By: **SHANAE POTTS**                02/28/2020
                                     Date

By: **N/A**      N/A                 N/A
                                     Date

By: _____  N/A                     N/A
                                     Date

**Seller**
**MICHIANA CHRYSLER DODGE JEEP RAM**

By: **EARL B BYRUM**                02/28/2020
                                     Date

Retail Installment Contract-IN Not for use in transactions secured by a dwelling.
©2019 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
75108*1*MIC-FI

RSSIMVLFLZIN 7/1/2019
Bankers Systems®
Page 5 of 5
02/28/2020  06:37 pm



DEAL# 43334
CUST# 11604959

# SUPPLEMENT TO INSTALLMENT SALES CONTRACT

This supplemental agreement is made this __28th__ of __February__, 20 __20__, between Michiana Chrysler Dodge Jeep Ram and the undersigned purchaser.

WITNESS : Buyer understands and agrees that the sale and delivery of the motor vehicle described in the attached Installment Sale Contract is conditioned upon approval and acceptance of the terms of said Installment Sale Contract by a finance company or bank to be selected by Seller. In the event the terms of said Installment Sale Contract are not acceptable to said finance company, Seller shall be relieved of further obligation or liability to deliver said motor vehicle lo buyer; provided however that Seller is hereby authorized to attempt to obtain other financing arrangements for Buyer, the terms of said alternative financing are acceptable to both Seller and Buyer, obligations for the sale and purchase of the said vehicle will be continuing and in force.

If Seller is unable to obtain alternative financing for Buyer or if such alternative financing arrangements are not acceptable to Buyer , Buyer shall immediately return and deliver said motor vehicle at Seller's place of business, and Seller shall return any trade in motor vehicle delivered to Seller. If Seller is unable to return Buyer's trade in motor vehicle, Seller will reimburse Buyer, "Fair Trade-In Value" , as indicated in Kelley Blue Book, minus any payoff on trade. If payoff is greater ttlan the "Fair Trade-In Value" , as indicated in Kelley Blue Book, Buyer is responsible to reimburse Seller the difference.

Buyer is responsible for any damage which occurred while subject vehicle was in Buyers possession. Buyer will pay a rental fee for the vehicle for the duration of the time the vehicle was in buyer's possession of $25.00 per day and $0.15 per mile driven from delivery to return. Buyer is also responsible for any damage that may have occurred to trade-in while on or off Seller's property. Buyer is responsible to reimburse Seller for any costs incurred for repair made to the vehicle in good faith. If Buyer shall fail to return and deliver Seller's motor vehicle as provided herein, Buyer shall be liable for and agrees to pay all expenses Seller may incur for recovery of subject vehicle, as well as any court costs and attorney fees necessitated by Buyer's failure to abide by this agreement with Michiana Chrysler Dodge Jeep Ram

_____       _____
AFFIDAVIT                          Seller Signature, Title

Notice required in accordance with requirements of Federal Fair Credit Reporting Act. This is to inform you that the aforementioned Installment Sale Contract of application for credit sale or lease will be offered to

_____ at _____

For purchase consideration as to whether it meets purchase or lease administration requirements.

Acknowledged: